**SMITH, Appellant,**

v.

**CITY OF CLEVELAND et al., Appellees.**

[Cite as *Smith v. Cleveland* (1994), 94 Ohio App.3d 780.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65603.

Decided June 6, 1994.

*John W. Martin,* for appellant.

*Barbara Marburger* and *Theodore J. Piechocinski,* Assistant Law Directors, for appellee city of Cleveland.

*Kevin Francis O'Neill,* for appellee ACLU.

*Patrick D'Angelo,* for appellee CPPA.

---

MATIA, Judge.

Plaintiff-appellant, William H. Smith, Administrator of the Estate of Michael J. Pipkins, appeals from the judgment of the Cuyahoga County Court of Common Pleas in case No. CV–250529, which denied appellant access to an administrative

hearing involving possible disciplinary action against two Cleveland police officers. Appellant assigns six errors for this court's review.

For the following reasons, appellant's appeal is not well taken.

## I. STATEMENT OF THE CASE

Appellant filed his complaint for declaratory judgment with accompanying motion for temporary restraining order on April 15, 1993 in order to gain access to a disciplinary hearing before Cleveland Safety Director Carolyn Watts–Allen scheduled for April 19, 1993. The city of Cleveland agreed to postpone the administrative hearing, thereby rendering the appellant's motion for temporary restraining order moot.

The Cleveland Police Patrolman's Association ("CPPA") filed a motion to intervene and a motion to add new party defendants. The trial court granted both motions on April 27, 1993. The American Civil Liberties Union ("ACLU") also sought and received permission from the trial court to file a brief on behalf of appellant.

On May 3, 1993, the trial court proceeded with oral argument. On May 7, 1993, the trial court issued its opinion and ruling in favor of defendants-appellees excluding appellant from the administrative hearing. The trial court's opinion and ruling were journalized on May 10, 1993.

On May 25, 1993, appellant filed a notice of appeal of the trial court's ruling and a motion for stay pending appeal. The trial court denied the motion for stay pending appeal on May 26, 1993. Appellant then filed a motion to stay pending appeal with this court on May 27, 1993. Appellant's motion to stay pending appeal was denied by this court the same day.

## II. STATEMENT OF THE FACTS

In December 1992, Michael J. Pipkins was arrested by defendants-appellees, Cleveland police officers Michael Tankersley and Jeffrey Gibson, and, while in their custody, died. Officers Tankersley and Gibson were not criminally charged by the City Prosecutor in spite of the fact that the Cuyahoga County Coroner determined that Pipkins's death was a homicide. In March 1993, Officers Tankersley and Gibson were administratively charged for failing to transport Pipkins for immediate medical attention.

Pursuant to Cleveland Charter Section 119 and the collective bargaining agreement between the city of Cleveland and the CPPA, a disciplinary hearing was scheduled before Cleveland Safety Director Carolyn Watts–Allen on April 19, 1993. As earlier stated, that hearing was postponed pending the outcome of appellant's declaratory judgment action.

After the trial court denied appellant's motion for declaratory judgment, the hearing was rescheduled for May 27, 1993. After three days of testimony and over one week of deliberations, the Safety Director found that Officers Tankersley and Gibson violated police procedure by not getting Michael Pipkins immediate medical attention. Both officers were suspended without pay.

## III. ASSIGNMENTS OF ERROR

Appellant's first assignment of error states:

"The trial court erred by misconstruing the silence of the Cleveland City Charter as to whether the hearing conducted by Safety Director, Carolyn Watts–Allen, into the conduct of Cleveland police officers Tankersley and Gibson and their failure to get decedent, Michael J. Pipkins, immediate medical aid could be conducted in secrecy."

### A. THE ISSUE RAISED: WHETHER THE TRIAL COURT ERRED IN INTERPRETING THE CLEVELAND CITY CHARTER

Appellant and its supporting *amici* argue that Chapter 25, Section 119 of the Cleveland Charter authorized the Mayor or a duly appointed hearing officer to "hold a hearing into the cause of the suspension in accordance with the requirements of due process of law and render judgment thereon." It is appellant's position that since the Cleveland Charter does not mandate that the hearings be held in private, the presumption must be that the hearings should be open to the public in general and appellant in particular.

The appellant's first assignment of error is without merit.

### B. THE STANDARD OF REVIEW

The public does not have the common-law right to attend meetings of governmental bodies. Therefore, any right the public has to attend a governmental activity must arise out of a provision in local, state or constitutional law. *Beacon Journal Publishing Co. v. Akron* (1965), 3 Ohio St.2d 191, 32 O.O.2d 183, 209 N.E.2d 399; *Dayton Newspapers v. Dayton* (1971), 28 Ohio App.2d 95, 57 O.O.2d 170, 274 N.E.2d 766.

### C. THE CITY OF CLEVELAND CHARTER

Chapter 25, Section 119 of the Cleveland Charter deals with the procedures for suspension of Cleveland police officers and firemen. Section 119 states:

"The Chief of Police and Fire Chief shall have the exclusive right to suspend any of the officers or employees who are in the classified service and are under their respective management and control, for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given by the

proper authority, or for any other just and reasonable cause. Prior to suspending any officer or employee of the police force, the Chief of Police shall ascertain whether a complaint on file with the Police Review Board relates to the conduct of the officer or employee in question. If so, the Chief of Police shall not suspend the officer or employee unless the Police Review Board concurs with the Chief's decision, in accordance with Section 115-4 of this Charter.

"If the Chief of Police or the Chief of Fire suspends an officer or employee under his control for the period not to exceed ten (10) working days, the Chief's decision shall be final.

"If the Chief of Police or Chief of Fire suspends any officer or employee under his control for more than ten (10) working days, the Chief concerned shall forthwith in writing certify the fact, together with the cause for the suspension, to the director of the department to whom he may be responsible, or if there be no such director then to the Mayor, who within five days from the receipt of such certificate shall, either personally or through a hearing officer appointed by the Director or the Mayor, hold a hearing into the cause of the suspension in accordance with the requirements of due process of law and render judgment thereon, which judgment, if the charge be sustained, may be suspension, reduction in rank, or dismissal and such judgment shall be final, except as otherwise hereinafter provided. If a hearing officer is used, and the Mayor or the Director of the department to whom the Chief may be responsible shall promptly upon receipt of the hearing officer's report and recommendations review the report and recommendations of the hearing officer and render a decision. The Director or the Mayor shall cause a copy of the written certification of suspension by the Chief and the cause giving rise to such suspension, the hearing officer's report and recommendations, and the decision of the Mayor or the Director to be filed with the Civil Service Commission. The Director or a hearing officer in any such hearing shall have the same power to administer oaths and secure the attendance of witnesses and the production of books and papers, as is conferred upon the Mayor, or the Council or a committee thereof by this Charter. (Effective August 8, 1988)"

Clearly, Section 119 does not provide for public access to Cleveland Safety Department hearings.

However, other sections of the charter specifically provide that other proceedings must be open to the public. For example, Section 28 provides for public access to all meetings of the Cleveland City Council; Section 124 specifies that no member of the Civil Service Commission can be removed from office without a public hearing and Section 127 requires that a public hearing take place before civil service rules can be adopted.

## D. THE TRIAL COURT DID NOT ERR IN ITS INTERPRETATION OF THE CLEVELAND CHARTER

The trial court found that since sections of the charter specifically provide for a public hearing and Section 119 does not specifically provide for a public hearing, the presumption is that the Section 119 hearing is intended to be closed.

A review of the record from the trial court shows that the trial court correctly applied the statutory rule of construction, "the mention of one thing excludes another." The charter expressly provides for public access to certain hearings. If the city electors had intended for police officer disciplinary hearings to be open to the public, the charter would provide for a public hearing as it does in other instances.

Appellant's first assignment of error is not well taken.

Appellant's second assignment of error states:

"The trial court erred in holding that Ohio's Sunshine Law does not require the hearings investigating Cleveland police officers Tankersley and Gibson's conduct in the death of Michael J. Pipkins be open to the public."

## A. THE ISSUE RAISED: WHETHER R.C. 121.22 REQUIRES PUBLIC ACCESS TO POLICE DISCIPLINARY HEARINGS

██ Appellant and the ACLU argue that R.C. 121.22, Ohio's Sunshine Act, mandates that meetings of public bodies be open to the public. Specifically, appellant argues that the hearing at issue was a meeting of a public body and, therefore, should have been open to public access.

For the following reasons, appellant's second assignment of error is without merit.

## B. R.C. 121.22

R.C. 121.22 requires that meetings of public bodies be open to the public. R.C. 121.22(B)(1) defines "public body" as follows:

" 'Public body' means any board, commission, committee, or similar decision-making body of a state agency, institution, or authority, and any legislative authority or board, commission, committee, agency, authority, or similar decision-making body of any county, township, municipal corporation, school district, or other political subdivision or local public institution."

R.C. 121.22(B)(2) defines "meeting" as follows:

" 'Meeting' means any prearranged discussion of the public business of the public body by a majority of its members."

In order for R.C. 121.22 to apply to Officers Tankersley and Gibson's hearing, Safety Director Carolyn Watts–Allen must be deemed a public body pursuant to statute.

## C. SAFETY DIRECTOR CAROLYN WATTS–ALLEN DOES NOT CONSTITUTE A "PUBLIC BODY" FOR PURPOSES OF THE STATUTE

A review of the record shows that Cleveland Safety Director Carolyn Watts–Allen is not a "public body" as defined by R.C. 121.22(B). Her role in these proceedings was to determine whether two Cleveland police officers should be disciplined pursuant to the charter. She acted alone in deciding what disciplinary measures would be appropriate; she alone evaluated the evidence presented. It cannot be said that her actions constitute the actions of a board, commission or committee as set forth in the statute.

Therefore, the trial court did not err in finding that the disciplinary hearing held before Cleveland Safety Director Carolyn Watts–Allen did not fall under the auspices of R.C. 121.22.

Appellant's second assignment of error is not well taken.

Having a common basis in both law and fact, appellant's four remaining assignments of error shall be considered concurrently.

Appellant's third assignment of error states:

"The trial court erred in denying plaintiff's motion for declaratory judgment because the First Amendment confers upon the public a broad 'right to know' concerning governmental administrative proceedings which extends to Officer Gibson and Tankersley's misconduct hearings."

Appellant's fourth assignment of error states:

"The trial court erred in holding that the type of hearings conducted by the Safety Director Carolyn Watts–Allen are not now and have not historically been, open to the public."

Appellant's fifth assignment of error states:

"The trial court erred in not considering other factors which courts have looked to in determining whether a First Amendment right of public access attaches."

Appellant's sixth assignment of error states:

"Since the Supreme Court decisions neither direct nor compel any sort of a two-prong test in which both prongs must be fully satisfied before a First Amendment 'right to know' attaches, the trial court erred in holding that since the appellant could not wholly fulfill the first prong, no other consideration would be given."

## A. THE ISSUE RAISED: WHETHER THE FIRST AMENDMENT RIGHT TO KNOW ATTACHES TO OFFICERS GIBSON AND TANKERSLEY'S DISCIPLINARY HEARINGS

■ In his remaining assignments of error, appellant and the ACLU argue that, through the Fourteenth Amendment, the First Amendment to the United States Constitution prohibits the government from "abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble and to petition the government for a redress of grievances." It is appellant's position that the First Amendment right to know extends to the police disciplinary hearings at issue in this case.

For the following, appellant's remaining assignments of error are without merit.

## B. THE STANDARD OF REVIEW

The Supreme Court of the United States has held that the First Amendment creates a qualified right of public access to some governmental proceedings. *Press–Enterprise Co. v. Superior Court of California.* (1986), 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1. The First Amendment also gives the public the right to receive ideas and information. *Richmond Newspaper, Inc. v. Virginia* (1980), 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973.

In *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439, the Supreme Court of Ohio held that the right of public access to a court proceeding created by the Ohio Constitution is no greater than the right created by the First Amendment. The court, in arriving at its decision, used the two-part test set forth in *Press Enterprises Co., supra,* in which the United States Supreme Court held that there is a federal constitutional right of access to criminal proceedings which have "historically been open to the press and general public" and in which "public access plays a significant positive role in the functioning of the particular process in question." *In re T.R.* at 12, 556 N.E.2d at 446. The court went on to state: "If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches. * * *" *Id.* at 12, 556 N.E.2d at 446. A case-by-case determination on the necessity of closure is required. *Globe Newspaper Co. v. Superior Court* (1982), 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248.

Therefore, in order for appellant to have had access to the police disciplinary hearing, such hearing historically would have had to been open to the public and public access must play a significant positive role in the functioning of the process.

## C. THE TRIAL COURT DID NOT ERR IN DENYING APPELLANT'S MOTION FOR DECLARATORY JUDGMENT SINCE THE FIRST AMEND-

MENT RIGHT TO KNOW DOES NOT ATTACH TO OFFICERS GIBSON AND TANKERSLEY'S DISCIPLINARY HEARINGS

In order to meet the first prong of the two-part test for a constitutional right of access, appellant must show that the disciplinary hearings in question must, historically, have a "tradition of accessibility." A review of the record shows that the Safety Department hearing is essentially an administrative proceeding which historically has not been open to the public. Traditionally, Safety Department hearings have only been attended by the Safety Director, the officers facing charges, the Chief of Police, the participants' legal representatives, the participants' witnesses and a stenographer. Prior to 1981, the charged officers themselves were not even permitted to attend. Clearly no historical tradition of public access exists and appellant has failed to meet the first prong of the two-part test for a constitutional right of access.

Appellant argues further that the trial court erred in not considering other factors in determining whether the First Amendment right of public access applied to the instant hearings. It is appellant's position that, even if the first prong of the two-part test is not met, the court must consider other factors. A review of the record shows that although the trial court correctly determined that the appellant could not meet the first prong, it also considered the second prong in stating:

"Since the plaintiff cannot meet the first prong, the second prong by law need not be considered. However, this court does find that the reason behind a closed disciplinary hearing is to protect an employee's right of privacy. An employee's right to have employment status determined outside of public view outweighs the benefits which might be achieved in opening the disciplinary hearing."

This court finds that the trial court did not err in applying the two-part test for a constitutional right of access nor did the trial court ignore additional factors.

For the foregoing reasons, appellant's remaining assignments of error are without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KRUPANSKY, P.J., and NUGENT, J., concur.